BRYAN SCHRODER
United States Attorney

RYAN D. TANSEY
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
101 12th Avenue, Room 310
Fairbanks, Alaska 99701
Phone: (907) 456-0245
Fax: (907) 456-0577
Email: Ryan.Tansey@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 4:19-CR-00009-RRB-SAO |
| CHRISTOPHER L. GORDON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**GOVERNMENT SENTENCING MEMORANDUM**

**SUMMARY OF SENTENCING RECOMMENDATIONS**

**TERM OF IMPRISONMENT** ........................................................................ **4 months**

**SUPERVISED RELEASE** ............................................................................... **1 year**

**FINE** ............................................................................................................. **$4,500**

**SPECIAL ASSESSMENT** ............................................................................. **$25.00**

The defendant pled guilty to violating the Marine Mammal Protection Act (MMPA) for shooting and killing a polar bear and letting it waste in his front yard for five months, eventually discarding it into the burn pile at the dump. The defendant did not shoot the bear in self-defense. Instead, he shot the bear because it was trying to eat butchered whale meat—meat that the defendant chose to leave out, unprotected, in his front yard, despite having access to bear resistant food storage lockers. This is a significant criminal violation of the MMPA and demonstrates a callous disregard for the natural resources and subsistence regimen in Alaska. The defendant has demonstrated similar disregard for Alaskan natural resources on multiple previous occasions. The defendant also has a violent criminal past, including a misdemeanor conviction for domestic violence that made it illegal for him to possess the firearm with which he shot and killed the polar bear in this case. These § 3553 factors, coupled with the importance of deterrence in these inherently difficult to detect wildlife crimes, makes a period of incarceration (*not* home detention) the appropriate punishment in this case.

As more fully described below, for these reasons the United States respectfully asks the Court to impose a sentence of four months' (120 days) imprisonment, followed by a one-year term of supervised release. The government also requests imposition of the $4,500 fine per the terms of the plea agreement. This sentence is sufficient, but not greater than necessary to punish the defendant and deter others from committing similarly egregious and wasteful wildlife crimes.

# I.    INTRODUCTION

### a.  Legal Framework

In 1972, almost 50 years ago, the United States Congress enacted the MMPA, 16 U.S.C. §§ 1361-1421(h), establishing a national program to protect and conserve marine mammals and their habitats.  Promulgation of the MMPA was prompted by a growing national recognition that "man's impact upon marine mammals has ranged from what might be termed malign neglect to virtual genocide."  *See* H.R. Rep. No. 92-707, at 2 (1971), reprinted in 1972 U.S.C.C.A.N. 4144.  In essence, the MMPA was designed to prohibit the "harassing, catching and killing of marine mammals by U.S. citizens or within the jurisdiction of the United States," *id.*, including those mammals which are "physiologically adapted to the oceans," *id*. at 27, such as polar bears, manatees, whales, dolphins, seals, and walruses, 16 U.S.C. § 1362(6).

The MMPA is premised on the fact that marine mammals are of "great *international* significance, esthetic and recreational as well as economic."  *Id*. at 26. (emphasis added)  In protecting these species, the MMPA sets out two specific goals. First, Congress determined that marine mammals "should be protected and encouraged to develop to the greatest extent feasible commensurate with sound policies of resource management."  16 U.S.C. § 1362(6).  Second, Congress desired to "maintain the health and stability of the marine ecosystem."  *Id*.

Alaskan Natives from coastal communities are exempt from the MMPA's general moratorium on the take of marine mammals for non-depleted species, and are allowed to

harvest them for subsistence and handicrafts provided that it is not done in a wasteful

manner. The USFWS has promulgated regulations defining "wasteful manner" as:

> Any taking or method of taking which is likely to result in the killing or injuring of marine mammals beyond those needed for subsistence purposes or for the making of authentic native articles of handicrafts and clothing or which results in the waste of a substantial portion of the marine mammal and includes without limitation the employment of a method of taking which is not likely to assure the capture or killing of a marine mammal, or which is not immediately followed by a reasonable effort to retrieve the marine mammal.

*See* 50 C.F.R. § 18.3 (2006).

### b. Case History

The defendant is a resident of the Native Village of Kaktovik, Alaska, situated on

Barter Island on Alaska's northeastern coast. It is not disputed that the defendant was

qualified to take marine mammals for subsistence and other purposes in accordance with

the MMPA and related regulations.

On December 20, 2018, in the village of Kaktovik, Alaska, the defendant left

butchered whale meat outside in his front yard, which attracted a polar bear, as well as

other animals. The defendant failed to use other resources available to him, including

bear resistant food storage lockers, to store the whale meat so as not to attract animals,

such as polar bears, to his front yard. Indeed, agents photographed a bear resistant food

storage locker in the defendant's yard, which he could have used:



The defendant shot and killed the polar bear because it was trying to eat the butchered whale meat. The defendant admitted that he did not shoot the polar bear in self-defense or defense of another. The defendant was proud of killing the bear, evidenced by a Facebook post he made the night he killed it:

//

//

//

//

//

//

//

//

Govt. Sent. Memo.                    Page 5 of 21
*United States v. Gordon*
4:19-CR-00009-RRB-SAO

Case 4:19-cr-00009-RRB   Document 27   Filed 02/21/20   Page 5 of 21



The defendant admits that, when he shot the polar bear, he had the knowledge and ability to harvest and use the meat and other parts for subsistence and other purposes. He also knew it was a violation of the MMPA to waste the bear. Others also encouraged the defendant to use the bear properly:

//

//

//

Govt. Sent. Memo.                    Page 6 of 21
*United States v. Gordon*
4:19-CR-00009-RRB-SAO



The defendant was also informed multiple times by a member of the U.S. Fish and Wildlife Service that he needed to tag and report the bear. However, the defendant did neither. Instead, between December 20, 2018, and May 22, 2019, a period of five (5) months, the defendant left the polar bear carcass in his front yard to waste without ever salvaging or using any portion of the bear. After a few weeks of laying in the defendant's yard, the polar bear carcass became covered with snow. A snow removal vehicle eventually hit the polar bear carcass, ripping off one of the bear's paws. The

Govt. Sent. Memo.                    Page 7 of 21
*United States v. Gordon*
4:19-CR-00009-RRB-SAO

Case 4:19-cr-00009-RRB   Document 27   Filed 02/21/20   Page 7 of 21

polar bear carcass was otherwise undamaged by the snow removal vehicle. The defendant knew that he could still have salvaged and used portions of the polar bear carcass, however he did not do so. Instead, the defendant left all of the harvestable remains of the polar bear to waste.

Some five months later, on May 22, 2019, the defendant had another Kaktovik resident pick up the polar bear carcass and burn it in the Kaktovik dump without ever using or salvaging any of its parts. On May 22, U.S. Fish and Wildlife Service agents received a report of a polar bear carcass located in Kaktovik's trash area. On the same day, waste management personnel conducted a controlled trash burn, where the polar bear carcass was partially incinerated. The next day, agents visited the burn site and located the charred remains of the polar bear, pictured below:



The single paw, ripped off by the snow removal vehicle, remained on defendant's lawn. The next day, the defendant told federal agents that they could take the polar bear's paw because it would "save me [the defendant] a trip to the dump."



At some point soon after the defendant killed the polar bear, a Kaktovik resident, T.S., posted a video on Facebook showing the dead polar bear and expressing her concern about the defendant's practices—both in killing the polar bear and his treatment of the whale meat.[1] The Alaska Eskimo Whaling Commission (AEWC), an organization in which Gordon is a Captain, pressured T.S. to remove the Facebook post. The AEWC explained that her post, "…could potentially harm their subsistence and whaling rights." Additionally, T.S. and other Kaktovik residents told agents that this was not the first time

---

[1] The government plans to present this video to the Court at sentencing.

the defendant had wasted an animal for which he was responsible. T.S. and other residents explained that over a period of two to three years, the defendant, in his role as a Whaling Captain, wasted large portions of two bowhead whales due to his failure to properly store and monitor the whale meat. One whale was lost to polar bears because the defendant failed to store it properly. The second whale was lost when a freezer that the defendant was responsible for monitoring stopped running.

When agents interviewed the defendant, he admitted that he shot the polar bear because it was attempting to eat the whale meat located in his yard. The defendant stated, "[the polar bear] just came back a couple of times before I shot it . . . I got tired of going out and chasing him off." When agents asked the defendant whether he harvested the polar bear, the defendant explained that he was unable to harvest the bear because he did not want to "…spill the [polar bear's] blood around the muktuk and the meat." The defendant further admitted that, on the day he shot the polar bear, a villager provided him with a tool capable of removing the bear's teeth. Agents asked the defendant why he did not use the tool and the defendant responded, "…I did what I wanted to do to stop it from eating my muktuk. I asked a few people if they wanted it, they said no… Understand?" The defendant also told federal agents that he "didn't even know if [the polar bear] was pregnant or not" prior to shooting it. At the conclusion of the interview, agents searched the defendant's yard where they located a section of the polar bear's leg. The defendant signed a property receipt acknowledging the bear's remains were found on his property.

### c. Procedural History

On July 10, 2019, the defendant was charged in a one count criminal Information for knowingly killing a polar bear and leaving its harvestable remains to waste in violation of the MMPA, Title 16, United States Code, Sections 1372(a)(2)(A), 1371(b)(3) & 1375(b); and Title 50, Code of Federal Regulations, Section 18.3. *See* ECF No. 1. The defendant pled guilty to this charge pursuant to a plea agreement on December 9, 2019. *See* ECF Nos. 22 and 23.

## II. SENTENCING CALCULATION

### a. Statutory Maximum Sentence

The maximum sentence that may be imposed on the defendant is one year in prison, a $100,000 fine, one year of supervised release, and a $25 mandatory special assessment.

### b. Sentencing Guidelines Calculation

The Probation Officer found the total offense level to be 8, and the defendant's criminal history category to be III. ECF No. 25, Presentence Report (hereinafter "PSR") at ¶¶ 24, 31b. The resulting Sentencing Guidelines range is 6-12 months. *Id*. at ¶ 51.

The government agrees with the Probation Officer's Criminal History calculation. However, the government believes that an additional +2 points should be added to the defendant's total offense level under U.S.S.G. § 3B1.3 because the defendant "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." Here, the defendant held the

Case 4:19-cr-00009-RRB   Document 27   Filed 02/21/20   Page 11 of 21

title of Whaling Captain, which holds a great deal of esteem and trust within his community. He also had a special skill: the ability to cut and prepare whale meat for special occasions for the entire community, which he was entrusted to do in this case. That position of trust, and his special skill, facilitated the defendant's commission and concealment of the offense. Specifically, the defendant's special skill, and the way he chose to utilize it—*i.e.*, by letting the whale meat freeze out in the open in his yard instead of using available and safer alternatives such as food storage lockers—attracted the polar bear to his front yard and caused the events of this case to unfold. Further, the organization in which the defendant is a Whaling Captain pressured a witness to remove videos of the polar bear carcass and whale meat from the internet, which helped to conceal the offense from the public and from authorities. Witnesses have also stated that they felt intimidated by the defendant and did not believe they could challenge his actions because of his position. Indeed, multiple witnesses have expressed reluctance to speak against the defendant at the upcoming sentencing hearing because they fear direct or indirect consequences from the defendant or others acting on his behalf in the community.

At bottom, the defendant is a Whaling Captain and possesses a special skill that the community has entrusted him to perform in a manner consistent with the subsistence regimen in Alaska. If *anyone* should have known better than to commit this crime, it is the defendant. The defendant should be held to a higher standard of conduct than others

in the community.  An additional +2 points should be added to defendant's total offense level under U.S.S.G. § 3B1.3.

Accordingly, the defendant's total offense level after acceptance of responsibility should be 10, which results in a Sentencing Guidelines Range of 10-16 months in Zone C.

### c. The Probation Officer's Recommended Sentence

The Probation Officer recommends an 8-month sentence of imprisonment.  PSR at 1, "Recommended Sentence."  Upon completion of the defendant's term of incarceration, the Probation Officer recommends a one-year term of supervised release.  *Id.*  The Probation Office recommends the $4,500 fine agreed upon by the parties.  *Id.*

## III.    GOVERNMENT'S RECOMMENDATION

The United States strongly recommends, and does not do so lightly, that the Court impose a sentence of imprisonment.  Such a sentence is appropriate here.  Even if the Court determines that defendant's Offense Level is in Zone B (as suggested by the Probation Officer's Guidelines calculation), a sentence of home confinement would not be appropriate to achieve the ends of justice here.  In 2018 the Sentencing Commission added a new application note to U.S.S.G. § 5C1.1 providing that judges should consider imposing a sentence other than imprisonment for "nonviolent first offenders" whose application guideline range is in Zone A or B of the Sentencing Table.  The Commission defines "nonviolent first offender" as a "defendant who has no prior convictions or other comparable judicial dispositions of any kind and who did not use violence or credible

Case 4:19-cr-00009-RRB   Document 27   Filed 02/21/20   Page 13 of 21

threats of violence or possess a firearm…. in connection with the offense of conviction."
See U.S.S.G. § 5C1.1, Application Note 4. That definition does not apply to the
defendant, who has numerous violent assault convictions, is a prohibited person under 18
U.S.C. § 922(g)(9), and used a firearm to commit the offense in this case. Accordingly, a
sentence of imprisonment is appropriate and within the discretion of the Court as the
most appropriate punishment here.

### a. The Nature and Circumstances of the Offense

This investigation and plea agreement establish that the defendant's conduct
blatantly contravenes the purpose of the MMPA's exemption for Alaskan Natives. As
former Senator Ted Stevens explained:

> 'For many of the Alaskan Natives, the selling of their handicrafts, fashioned
> painstakingly and with great skill from ocean mammals is the sole basis of their
> cash economy. These include the carving of ivory, the sewing of fur parkas and
> mukluks, and the sale of mammal food to other Natives…. Extensive coastal
> bartering and sale of mammal food takes place'; 'A small but vital marine food
> industry has been created in the Native community. Section 101(b) will also
> protect this'; 'Mr. President, if the Native people of my State are denied the right
> to carve, sew, and *utilize fully the entire animal carcass*, the result will be truly
> disastrous.'

*See United States v. Clark*, 912 F.2d 1087, 1089 (9th Cir. 1990) (quoting 118 Cong.Rec.

25,259; 25,259–60 (1972) (statement of Sen. Stevens)) (emphasis added).

Here, the defendant did not "utilize fully the entire animal carcass;" he utilized

exactly none of it and then proceeded to burn it in the dump.

Additionally, the defendant shot the bear after, it can be argued, knowing the

possibility existed that a Polar Bear would could be lured into his front yard by leaving

butchered whale meat out in the open. Even if the defendant's primary intent was not to lure the bear to his yard, at the very least he was on notice that these circumstances were likely to attract one. This fact makes the defendant's wasting of the entire bear even more troublesome and inexcusable.

It would be difficult to imagine a more brazen violation of the MMPA in these circumstances. If the defendant's conduct here does not warrant incarceration under the MMPA, it is difficult to imagine a violation that would.

### b. The History and Characteristics of the Defendant.

The PSR accurately indicates that the defendant has a lengthy criminal history, including multiple assault convictions for assaults on women and a conviction for a misdemeanor crime of domestic violence. The defendant was also on probation for one of these crimes when he committed the instant offense. These offenses include:

- **March 19, 2014 (2BA-14-0124CR):** The defendant was convicted of a domestic violence assault on a female victim, A.K. In March 2014, the defendant returned home intoxicated, became angry and bit A.K. on the arm, breaking the skin, and significantly damaged their house. The defendant broke a window, dislodged a doorframe, broke personal items and made numerous holes in the walls. A.K. was scared and attempted to use her cell phone to call for help, but the defendant grabbed it from her and threw it outside into the snow. A.K. was in fear for her life and decided to get her two children, ages 4 and 7, out of the house. When she attempted to leave with her children the defendant told her that he would burn the house down if she did not return.

- **August 1, 2016 (2BA-16-0245CR):** The defendant assaulted another female victim, R.K, who reported that the defendant grabbed her face and pulled her hair causing pain. The defendant also pushed her down to the ground several times while she was trying to walk away from the situation, also causing pain.

Case 4:19-cr-00009-RRB   Document 27   Filed 02/21/20   Page 15 of 21

When she tried to walk away the defendant followed her and continued to hurt her. Defendant admitted to taking these actions and said that R.K. was disrespecting him, and that he ". . . was not going to take it and would even use physical force to stop it."

- **September 4, 2016 (2BA-16-0274CR):** North Slope Police Department Officers contacted R.K., who reported that the defendant grabbed her face, pushed her on the bed, hit her approximately five times with his fist, and slapped her approximately once, because R.K. refused to have sex with the defendant. This case was dismissed per a plea agreement in case 2BA-16-0245CR.

- **February 18, 2017 (2BA-17-0136CR):** R.K. contacted officers and reported she went to the defendant's residence for the purpose of obtaining clothing for their son. When R.K. entered the residence, the defendant became angry. He picked up R.K. and threw her to the ground. As a result of her injuries, R.K. was in leg and back pain. Officers observed a line shaped bruise on R.K.'s back and a two-inch circular bruise on her thigh.

- **February 25, 2017 (2BA-17-0041CR):** The defendant struck a male victim, L.G. Witnesses stated that the defendant was hitting L.G. hard in the head. Officers noted that L.G.'s head was bleeding and that L.G. thought the defendant may have broken his nose.

The defendant has served a grand total of one day in jail for these offenses, which the probation officer accurately states weighs in favor of a longer prison sentence here.

Importantly, the defendant's conviction in Case No. 2BA-14-0124CR is a domestic violence assault, which makes the defendant a prohibited person under 18 U.S.C. § 922(g)(9). Accordingly, it was unlawful for the defendant to possess the firearm he used to shoot the polar bear in this case. The defendant's Sentencing Guidelines Range on this felony charge would have been 18-24 months. The United States, in its discretion, chose not to seek a felony indictment against the defendant for this violation

Govt. Sent. Memo.                                 Page 16 of 21
*United States v. Gordon*
4:19-CR-00009-RRB-SAO

Case 4:19-cr-00009-RRB   Document 27   Filed 02/21/20   Page 16 of 21

of 18 U.S.C. § 922(g)(9). However, this fact is highly relevant to the defendant's history and pattern of disregarding the law and weighs in favor of a harsher sentence in this case.

Further, this is not the first time the defendant has shown disrespect for the wildlife resources and subsistence regimen in Alaska. Over a period of two-three years, the defendant, in his role as a Whaling Captain, wasted large portions of two bowhead whales due to his failure to properly store and monitor the whale meat. One whale was lost to polar bears because the defendant failed to store it properly. The second whale was lost when a freezer that the defendant was responsible for monitoring stopped running. There can be no doubt that the defendant's wasting of two other marine mammals on two prior occasions under circumstances where he had opportunities to properly use the animals is similar to the offense charged here – the killing and wasting of a polar bear that he had numerous opportunities to properly salvage.

### c. The Seriousness of the Offense

Polar bears are "threatened" under the U.S. Endangered Species Act due to climate change causing an ongoing loss of their sea ice habitat. Scientists have recently confirmed that polar bears are literally starving due to these environmental changes. *See* High-energy, high-fat lifestyle challenges an Arctic apex predator, the polar bear, Pagano et al., Science, (Feb. 2, 2018) (https://science.sciencemag.org/content/359/6375/568). Accordingly, polar bear populations are significantly smaller than certain other marine mammals protected by the MMPA, which magnifies the seriousness of the defendant's offense and is accordingly reflected in his higher sentencing guidelines calculation.

Govt. Sent. Memo.                    Page 17 of 21
*United States v. Gordon*
4:19-CR-00009-RRB-SAO

The defendant also created a dangerous situation for other residents in Kaktovik by leaving whale meat outside that he knew could likely attract a polar bear. Any claim by the defense that it is "custom" or "tradition" to freeze whale meat outside where it could attract polar bears is not a defense to this crime, nor is it a mitigating factor here. *See United States v. Clar*k, 912 F.2d 1087, 1089 (9th Cir. 1990) (rejecting "custom" as a defense to wasting walrus under the MMPA). Numerous residents of Kaktovik make use of bear resistant food storage lockers provided by the town to store their food. By leaving butchered whale meat outside, in the open, with knowledge that polar bears frequent the village, the defendant invited this polar bear contact. This creates a dangerous situation not only for the polar bear, but also for the other Kaktovik residents. Indeed, local citizens in Kaktovik were upset and worried about the defendant's conduct and publicly posted comments and videos about the defendant's lack of care with the Bowhead whale meat. Kaktovik residents publicly expressed similar concerns about the defendant's treatment of the polar bear.

If the defendant insists on pursuing this traditional way of freezing whale meat, he must at least do so responsibly to mitigate the risks it poses to the wildlife and the community. He chose not to do so here, and he bears the burden of that decision.

### d. The Need for Adequate Deterrence and Protection of the Public

The need to appropriately reflect the seriousness the defendant's offense, afford appropriate deterrence, protect the public, and afford the defendant appropriate

Case 4:19-cr-00009-RRB   Document 27   Filed 02/21/20   Page 18 of 21

rehabilitation similarly dictate that a sentence of four months' imprisonment and one-year supervised release is appropriate.

The nature of the defendant's criminal acts and the remote location where they occurred make this type of crime particularly difficult to detect. The proposed term of imprisonment will serve to alert others of the serious consequences that may be incurred by those who similarly waste marine mammals.

### e. The Need for Educational, Vocational, or Other Care or Treatment

The requested sentence will allow the defendant to participate in any Bureau of Prison programs for which he is eligible.

### f. The Kind of Sentences Available and the Sentencing Range Established by the Sentencing Commission

The United States' requested sentence is an appropriate sentence and is *below* the bottom of the appropriate guideline range established by the Sentencing Commission.

### g. Sentencing Disparity

Four months' imprisonment would also be consistent with other MMPA cases based on similar facts. For example, in *United States v. Gonzales et al.*, Case No. 3:07-cr-5656, two defendants received sentences of five-months and 90 days imprisonment in an MMPA case involving the illegal take of a grey whale without authorization. There, like here, the defendants knowingly violated the MMPA in a way that demonstrated a conscious disregard for the law and for the preservation of marine mammals, and the court sentenced the defendants accordingly. *See* Case No. 3:07-cr-5656, ECF No. 185.

Case 4:19-cr-00009-RRB   Document 27   Filed 02/21/20   Page 19 of 21

A sentence of imprisonment is actually *more* warranted in this case because of the defendant's recent violent criminal record, his status as a prohibited person under 18 U.S.C. § 922(g)(9), his status as a Whaling Captain, and the previous instances that he wasted marine mammals. All of these factors weigh strongly in favor of a period of imprisonment and were not present in other MMPA cases reviewed by the government.

This case is also distinguishable from other MMPA cases in this district where defendants were sentenced to periods of probation or home confinement. For example, in *United States v. Alexander*, Case No. 1:12-cr-00004, the parties initially agreed to a term of 6-months imprisonment in an Alaska MMPA case involving the unlawful take of multiple sea otters. However, after being provided access to the defendant's medical records and speaking with his treating physicians a decision was made to alter the terms of the plea agreement to a term of 6 months home confinement (with release for medical treatment) given the debilitating and life threatening nature of defendant's illness. *See* Case No. 1:12-cr-00004, ECF No. 33 at 5. Alexander's criminal history was also remote in time, which also impacted the government's sentencing recommendation. Similar factors are not remotely present here.

### h. Restitution

There are no claims for restitution in this case.

## IV. CONCLUSION

For the reasons stated herein, the United States respectfully asks the Court to sentence the defendant to a total term of imprisonment of four months. The United States

Govt. Sent. Memo.                    Page 20 of 21
*United States v. Gordon*
4:19-CR-00009-RRB-SAO

Case 4:19-cr-00009-RRB   Document 27   Filed 02/21/20   Page 20 of 21

also asks the Court to impose a $4,500 fine and a one-year term of supervised release following the defendant's release from prison during which he shall not hunt or kill any marine mammals other than bowhead whales, consistent with the plea agreement. The United States also asks the Court to impose the following condition: if the defendant hunts for bowhead whale during the period of supervised release, he shall report the strike, kill, attempt, miss, and if a kill is made, the distribution of meat to the village. This sentence recognizes the seriousness of the defendant's crime, his history and characteristics, and the need to deter others from engaging in similar activity.

RESPECTFULLY SUBMITTED this 21st day of February, 2020, in Fairbanks, Alaska.

BRYAN SCHRODER
United States Attorney

 s/ Ryan D. Tansey
RYAN D. TANSEY
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the
foregoing was served electronically
on all counsel of record
via the CM/ECF system


s/ Ryan Tansey
Office of the U.S. Attorney