Reeves Amodio LLC
500 L Street, Suite 300
Anchorage, Alaska 99501-1990
Phone (907) 222-7100, Fax (907) 222-7199

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CHRISTOPHER GORDON, )<br>)<br>Defendant. )<br>_____ ) | Case No. 4:19-cr-00009-RRB-SAO |

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant Christopher L. Gordon, comes before the court after having pled guilty to one count of violating the Marine Mammal Protection Act ("MMPA") for wasting a polar bear, and pursuant to a partial plea agreement with the Government. Mr. Gordon submits this sentencing memorandum to aid the court in determining an appropriate sentence under 18 U.S.C. § 3553(a). As more fully described below, Mr. Gordon's role within his community of Kaktovik, as well as the circumstances of his crime, and the policy considerations of the MMPA warrant a sentence of one month of home detention, fine of $4,500 and a one-year period of supervised release in addition to the sentence already imposed by his tribe, and described in the letter attached to this memorandum as Exhibit A.

I.    **Introduction**

Christopher Gordon is an Alaska Native resident of Kaktovik, a small village on the North Slope where he has lived most of his life, outside of brief time in Barrow. Mr. Gordon does not have any significant criminal history. He is one of the few able-bodied men in Kaktovak capable of engaging in subsistence for the village. This is precisely the activity he was engaged in when he took the polar bear at issue in this case. As a young man, Mr. Gordon learned how to hunt from his grandfather and his uncle. He continues to hunt on behalf of his village and is teaching his own five children how to do so. Mr. Gordon's crime was not shooting and killing a polar bear. As an Alaska Native, Mr. Gordon is subject to an exemption within the MMPA and therefore the mere act of shooting the polar bear is not criminal. Rather, his lack of diligence in harvesting the bear led to its waste and is the actual criminal violation contemplated by the MMPA. Mr. Gordon recognized the gravity of his offense by pleading guilty to it. Unlike most violators of the MMPA, Gordon did not profit or benefit from his crime in any way. Rather, his crime stemmed from attempting to protect his community's food as he was processing it in the traditional manner of refreezing it for distribution in the community.

## II. Case history

### a. Background

On December 18, 2020, Mr. Gordon was at his home in Kaktovik preparing muktuk for a village feast. As part of the traditional process for preparing it Gordon thawed the muktuk in his home, cut it into individual portions. Due in part to the sheer volume of the village's muktuk, Mr. Gordon had to refreeze it in his yard in order to keep the portions separate during the freezing process, rather than store it in a freezer or other container. Mr. Gordon's method is a traditional

method of preparing muktuk, and is encouraged among whaling captains. An example can be seen here:[1]



---

[1] Cover of "I Am Inuit," Brian Adams and Julie Decker (Benteli 2018).

Page **3** of **13**

Reeves Amodio LLC
500 L Street, Suite 300
Anchorage, Alaska 99501-1990
Phone (907) 222-7100, Fax (907) 222-7199

A polar bear repeatedly attempted to enter Mr. Gordon's yard, and he attempted to fend it off. Eventually Mr. Gordon shot the bear. As he noted on a Facebook post, "I did what I know is right. I can't let a bear feast on what's going to be shared."[2]

Mr. Gordon left the carcass in his yard, in order to avoid ruining the village's muktuk by spilling the bear's blood on it while harvesting it. Mr. Gordon was dilatory in harvesting it, and the bear's carcass quickly became covered with snow and frozen due to the usual weather in December on Alaska's North Slope. By January, the carcass was buried in snow and therefore incapable of being harvested. Apparently, the carcass was sufficiently covered in snow that a snow removal vehicle struck it in or around January and severed a limb. This rendered the bear incapable of being harvested and effectively wasted it. Wasting the bear did not appear to be Gordon's intent. In the Facebook post previously referenced, and shown in the Government's sentencing memo, Gordon goes on to say, "…definitely excited for new skin." When the carcass thawed in the spring, Gordon arranged to have it taken to the city dump where it was found and documented by Fish and Wildlife Service ("FWS") agents.

At some point during the winter of 2019, a former resident of Kaktovik, TS, visited the village and posted a video of the carcass. TS's commentary accompanying the video is inconsistent with the actual footage. For example, TS suggests that there are numerous tracks and animal dung around the carcass when in fact there is only fresh snow. TS reported the carcass to FWS and accused Mr. Gordon of wasting muktuk at other times. Apparently on one occasion meat spoiled because a freezer containing it failed (an occurrence unlikely to happen outdoors in

---

[2] ECF No. 27, the Government's sentencing memorandum, contains a screenshot of this post at 7.

Page **4** of **13**

Defendant's Sentencing Memorandum
USA v. Gordon;
Case No. 4:19-cr-00009-RRB-SAO

Case 4:19-cr-00009-RRB   Document 38   Filed 02/26/20   Page 4 of 13

Kaktovik in December). In another alleged instance, a polar bear consumed Mr. Gordon's whale meat. However, the record is silent as to whether TS concluded that these alleged experiences may have made Mr. Gordon more cautious about storing his meat in a freezer which may be less reliable than the winter weather in Kaktovik, or of polar bears.

### b. Procedural posture

Mr. Gordon does not dispute the procedural recitation adopted by the Government at page 11 of its sentencing memorandum. Mr. Gordon does note that the terms of the plea agreement included the following terms:

> "The parties agree not to seek a sentence of more than 120 days (4 months) imprisonment. The parties agree that the defendant should serve a 1-year term of supervised release following any term of imprisonment. The parties agree that the defendant shall not hunt or kill any marine mammals other than bowhead whales for the period of supervised release. The defendant agrees to pay a total fine of $4,500. The United States agrees not to prosecute the defendant further for any other offense related to the event(s) that resulted in the charge(s) contained in the Information, including any prosecutions pursuant to 18 U.S.C. § 922.
>
> The defendant will waive all rights to appeal the conviction(s) and sentence imposed under this agreement. The defendant will also waive all rights to collaterally attack the conviction(s) and sentence, except on the grounds of ineffective assistance of counsel or the voluntariness of the plea(s)."[3]

### III. Sentencing Guidelines Calculation and Recommendation

---

[3] ECF No. 21, hereinafter "Plea Agreement."

REEVES AMODIO LLC
500 L STREET, SUITE 300
ANCHORAGE, ALASKA 99501-1990
PHONE (907) 222-7100, FAX (907) 222-7199

### a. The Probation Officer's sentencing calculation is inappropriately enhanced and many of the conditions requested to not have a nexus to Mr. Gordon's crime.

The Probation Officer found a total offense level of 8 and a criminal history category of III.[4] Mr. Gordon does not object to the Probation Officer's criminal history category calculation. However, he does object to the calculation of the offense level since it is inappropriately enhanced four points by the application of USSG § 2Q2.1(b)(3)(B)(iii). This enhancement is based on the taking of an endangered species. However, its application to this case is inapposite since Mr. Gordon is permitted to take even endangered species pursuant to the Alaska Native exception codified at 50 CFR § 216.23(a). Therefore, nothing about the species of animal wasted should be used to enhance the offense level.

Additionally, the Probation Officer requests imposing conditions which have little to do with this crime, namely those having to do with alcohol and substance abuse. Given the lack of nexus of alcohol use and this case, or evidence of such a problem, the Court should not impose those terms.

### b. The Government's suggested enhancement for Mr. Gordon's status as a whaling captain does not apply.

The Government argues that U.S.S.G § 3B.1 applies because Mr. Gordon is a whaling captain. This argument is preposterous for precisely the reasons it was rejected in the PSR. U.S.S.G § 3B.1 applies where an individual abused a position of power or trust to facilitate their

---

[4] ECF No. 25, Presentence Report (hereinafter "PSR")

criminal conduct. The Government argues it specifically applies because of the "special skills" Mr. Gordon has as a whaling captain which involve tracking and killing whales. However, this case does not involve hunting whales. Rather, it involves the waste of a polar bear. The Government also alludes to unsubstantiated allegations that "witnesses" have felt intimidated. However, the statements of these anonymous and allegedly intimidated witnesses are not part of the factual background of this case, appear for the first time in two sentences in the Government's sentencing memorandum and should not be credited by the Court.

Mr. Gordon's criminal conduct did not involve hunting whales, storing muktuk, or shooting the bear. The latter activity is permitted for Mr. Gordon pursuant to the exemption for Alaska Natives to the MMPA under 50 CFR § 216.23(a). Rather, Mr. Gordon's crime was leaving the carcass where it lay for an unreasonable period of time, rather than harvesting it. The Court should reject the Government's suggested enhancement as Mr. Gordon's "special ability" to hunt whales has no nexus with his failure to properly harvest a polar bear carcass.

### c. Sentencing recommendation

When properly calculated, Mr. Gordon's offense level should be calculated at level four. The PSR is correct that the baseline for his offense is level six. All parties agree he is entitled to acceptance of responsibility for his offense under U.S.S.G § 3E.1, which decreases the offense level by two levels. Mr. Gordon's offense level of four and criminal history category of III therefore put him in Zone A, which recommends a sentence of 0-6 months. For the reasons set forth below, the Court should impose a sentence of one month of home confinement, one year of supervised release

and the $4,500 fine contemplated by the plea agreement in addition to the sentence already imposed the Mr. Gordon's tribe.

### d. The nature and circumstances of the offense

As already noted, Mr. Gordon was freezing muktuk, in accordance with local custom and practices, in his own yard. The Government's characterization of this as an attempt to "lure" or "bait" a bear is absurd and demonstrates a misunderstanding for Inuit custom and cultural practices. Mr. Gordon shot the bear in order to protect his village's food supply. Again, Mr. Gordon's real crime was not shooting the bear, it was not properly harvesting it after killing it. Unlike most MMPA cases, which involve poaching violations designed to profit the defendant, Mr. Gordon derived no benefit from wasting the bear beyond securing his village's ability to eat. Mr. Gordon summed up the nature of the offense when he wrote on Facebook, "I can't let a bear feast on what's going to be shared."

Moreover, the circumstances at the time made it difficult for Mr. Gordon to harvest the bear. Snow covered it, and it quickly froze. Although it may have been harvestable when it thawed in the spring, the snow removal vehicle eliminated that possibility when it severed the bear's limb. Mr. Gordon's waste of the bear did not benefit him in any way. His tribe has recognized his crime for what it is – a lack of diligence rather than a callous disregard for life – and is punishing him accordingly.[5] This Court should view the facts in a similar light.

### e. The history and characteristics of the defendant

---

[5] Exhibit A: Letter to Mr. Gordon from the Tribe. Mr. Gordon has agreed to the terms of the sentence described in the letter.

Mr. Gordon is a lifelong Kaktovik resident and important member of the community. In addition to caring for five children, he assists the community in maintaining its traditional subsistence lifestyle and its food supply. The Government appears to assume, essentially, that if Mr. Gordon had allowed the bear to eat the muktuk, Mr. Gordon could have simply gone to the local, non-existent Carrs, and bought an alternate food supply to feed the village. Obviously this is far from the reality in a village from Kaktovik and the community heavily relies on able bodied men like Mr. Gordon to supply its food.

Mr. Gordon does not deny his criminal history. However, it is an unremarkable one in his community. It consists of a handful of minor misdemeanor convictions. Notably, the Government relies partly on cases that were dismissed in painting a false portrait of Mr. Gordon's allegedly violent nature. Had the true circumstances of these cases been anything close to the Government's descriptions, Mr. Gordon would undoubtedly have a much more serious criminal history. However, the actual crimes Mr. Gordon was convicted of bely the Government's characterization of them in its sentencing memorandum. Ultimately, Mr. Gordon is a vital member of his community because he is able to help provide for it. Incarcerating Mr. Gordon for protecting that community only further hurts it.

### f. The seriousness of the offense and sentencing disparity

Mr. Gordon does not deny that he shot and killed a single polar bear. However, that is not his crime. What in fact occurred is that Mr. Gordon wasted a single animal. The underlying facts of this matter are considerably different than the typical MMPA violation, which generally involve poaching for profit by the defendant. In Mr. Gordon's case, a polar bear repeatedly approached muktuk which

was in Mr. Gordon's yard in preparation for a community feast. After several unsuccessful attempts to scare the bear away, Mr. Gordon was forced to shoot it. Unfortunately, a snow removal vehicle ran over the carcass before Mr. Gordon was able to harvest it, consistent with the provisions of 16 USC § 1371(b)(3). The damage caused by the snow plow effectively rendered the carcass unharvestable, through no fault of Mr. Gordon's. In effect, Mr. Gordon killed the polar bear in order to protect a town food source. He was unable to properly harvest the carcass due to intervening forces, rather than his own intentional or malicious waste of a protected animal. The fact that the Government is either ignorant of, or apparently does not approve of, Alaska Native cultural practices with respect to the preparation of muktuk should not be reflected in Mr. Gordon's sentence.[6]

The MMPA is not typically applied to individuals in Mr. Gordon's situation. Rather, it is meant to primarily meant to prohibit poaching and profit thereof from harvesting protected marine mammals. For example, USA v. Sherman Roger Alexander, 1:12-cr-00004, is cited by the Government as a distinguishable case, and it certainly is. However, it is distinguishable in the sense that the defendant's far more egregious behavior resulted in a sentence of home confinement and the Government is asking Mr. Gordon to do prison time for far less damaging conduct. In that case, the defendant, among other things, took approximately 87 sea otters, worth approximately $30,000 in order to produce saleable art. After pleading to three counts, the defendant in that case was sentenced a year of probation, six months home confinement, and a $10,000 fine. In another case, United States v. John Boone, 3:13-cr-00004, the defendant was convicted of illegally selling two sea otter pelts.

---

[6] Mr. Gordon anticipates a witness at sentencing will explain the very practical reason muktuk is separated and then refrozen.

After pleading to one count, he was sentenced to two years' probation and a $3,000 fine. Compared to other MMPA cases, this is one of the least serious MMPA violations. For example, Mr. Gordon wasted $\frac{1}{87}$th the number of animals and made $30,000 less profit than the defendant in Alexander. In fact, Mr. Gordon made no profit whatsoever. That defendant received a sentence of home confinement. The Court should sentence Mr. Gordon accordingly, particularly considering the punishment already imposed by his tribe.

### g. The need for adequate deterrence and protection of the public

Mr. Gordon is being punished by his tribe.[7] As a result, his actions and their consequences are quite well known to the public. The specific terms of the tribal sentence include the following:

1. Probation for 3 years;
2. 300 hours community service;
3. Public apology to the community of Kaktovik;
4. Present quarterly on hunting ethics and duty to take care of the animal; and
5. Hunt for Elders and disabled.

This sentence allows Mr. Gordon to remain in Kaktovik will allow the tribe to be able to make culturally appropriate services available to him, to help him get back on track. This option is not available in prison. Punishing Mr. Gordon by sending him to prison does nothing to deter anyone in the Kaktovik community, in fact harms the community, and reinforces a community view of the federal government as an uncaring sovereign without respect for local tradition and practice. Such

---

[7] Exhibit A

Page **11** of **13**

Defendant's Sentencing Memorandum
USA v. Gordon;
Case No. 4:19-cr-00009-RRB-SAO

Case 4:19-cr-00009-RRB   Document 38   Filed 02/26/20   Page 11 of 13

a viewpoint may lead to further criminal acts and a reluctance to cooperate with the federal government in the future. Indeed, one might argue the Government's sentencing memorandum reinforces such a view of its level of respect for local practices and cultural traditions.

### h. The need for educational, vocational, or other care or treatment

The suggested sentence will allow Mr. Gordon to comply with the terms of the tribal punishment, which require him to present on hunting ethics and duties with respect to the same.

### i. The kind of sentences available and the sentencing range established by the sentencing commission

Mr. Gordon's suggested sentence is within the range contemplated by the Sentencing Commission guidelines.

### j. Restitution

There are no claims for restitution in this case.

## IV. Conclusion

Mr. Gordon was not diligent in harvesting the bear carcass, and here we are. He did not shoot it maliciously, rather he shot it to protect his village's food supply. His community has recognized this crime for what it is and is punishing him accordingly. A sentence of one month of home confinement in addition to the other terms already contemplated by the plea agreement will ensure that Mr. Gordon is appropriately punished, and his community is not.

DATED this 26th day of February, 2020.

                                      REEVES AMODIO LLC.

By:   */s/Brian J. Stibitz*_____
      Brian J. Stibitz
      ABA# 0106043
      brian@reevesamodio.com

CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing was faxed the _____ day of February, 2020 to:

Ryan D. Tansey
Assistant United States Attorney
101 12th Avenue
Room 310
Fairbanks, AK 99701


By: */s/Tayler Haag*_____
    Tayler Haag